## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

|  |  |
|---|---|
| RICHARD IMMERMAN, on behalf of himself and all others similarly situated, )<br>)<br>) | |
| Plaintiff, | ) CASE NO. )<br>) CLASS-ACTION COMPLAINT |
| vs. | )<br>) JURY TRIAL DEMANDED |
| THE PROCTER & GAMBLE COMPANY, | ) )<br>) |
| Defendant. | )<br>) |

RICHARD IMMERMAN, on behalf of
himself and all others similarly situated,

          Plaintiff,

      vs.

THE PROCTER & GAMBLE COMPANY,

      Defendant.

)
)
)
)
)
)
)
)
)
)
)

CASE NO.

CLASS-ACTION COMPLAINT

JURY TRIAL DEMANDED

### <u>INTRODUCTION</u>

1.      This is a class-action lawsuit against The Procter & Gamble Company alleging illegal multi-labeling of P&G's Crest Sensitivity Treatment & Protection toothpaste in that P&G touts it as "New!," when it isn't, and as providing rapid relief from tooth sensitivity (e.g., "Relief Within Minutes"), when it doesn't. Crest Sensitivity is all-but identical to Crest's Pro-Health toothpaste, yet P&G lies about Crest Sensitivity's attributes, so P&G can charge customers $3 more per tube than they pay for Crest Pro-Health (a 75% price premium). The truth is that Crest Sensitivity actually requires weeks of use before even the possibility of reduced tooth sensitivity can begin.

2.      On September 30, 2011, the National Advertising Division of the Better Business Bureau reported its findings with respect to an inquiry concerning health-and-performance claims made by P&G in Internet advertising and on product packaging for Crest Sensitivity. The claims at issue included:

Relief Within Minutes*

* For Sensitivity relief within minutes, first brush sensitive teeth
for 30 seconds each.

When used as directed [Crest Sensitivity] provides relief from
sensitivity pain within minutes . . .

Stop Tooth Pain, fast.

You're only minutes away from lasting tooth sensitivity pain
relief* with the Crest Sensitivity Treatment & Protection
Toothpaste. So you don't have to wait to enjoy all your favorite hot
and cold foods.

3.      After a thorough review of the pertinent clinical studies, NAD concluded these

claims were unsubstantiated. NAD concluded that P&G "failed to provide a reasonable basis for

its claims."[1]

NAD noted that the strong immediate pain relief claims at issue are
unqualified, communicating a far greater benefit to consumers than
the studies' results reflect. While there is improvement in tooth
sensitivity *over time*, with more clinically meaningful
achievements at days three and after two weeks for both studies,
NAD determined that the totality of the evidence was insufficient
to support the advertiser's "relief within minutes' claims and
recommended that they be discontinued.[2]

4.      P&G's false labels offering "Relief Within Minutes" constituted multi-labeling in

that P&G marketed its all-but identical Crest Pro-Health toothpaste *without* this representation.

This false label—based on P&G's multi-labeling—delivered highly material and false

information to consumers that purported to differentiate Crest Sensitivity from P&G's

comparable product that requires several weeks of use before providing any relief. P&G's multi-

labeling allowed it to charge a 75% price premium for Crest Sensitivity when such price

premium was not justified.

---

[1] NAD Case #5836, Report at 14 b, 39 (Sep. 30, 2011).
[2] *Id.* at 13-14.

5.      Crest Sensitivity and Crest Pro-Health have the same active ingredient, in the same amount, the same indicated uses, the same warnings, same directions, same inactive ingredients, and the same flavor. Indeed, even the patent numbers that P&G lists on the product labels are the same.

6.      Only three differences exist between Crest Sensitivity and Crest Pro-Health—the packaging, the color, and the price: (1) Crest Sensitivity's packaging includes claims of rapid relief while Crest Pro-Health's packaging does not; (2) Crest Sensitivity uses a slightly different coloring additive than Crest Pro-Health; and (3) Crest Sensitivity is $6.99 for a 4.2 ounce tube, compared to $3.99 for a 4.2 ounce tube of Crest Pro-Health—a 75% price premium.

| | **Crest Sensitivity** | **Crest Pro-Health** |
|---|---|---|
| **Active Ingredient** | Stannous fluoride 0.454% (0.16% w/v fluoride ion) | Stannous fluoride 0.454% (0.16% w/v fluoride ion) |
| **Purpose** | Anticavity, antigingivitis, antisensitivity toothpaste | Anticavity, antigingivitis, antisensitivity toothpaste |
| **Uses** | • aids in the prevention of cavities<br>• helps prevent gingivitis<br>• helps interfere with the harmful effects of plaque associated with gingivitis<br>• builds increasing protection against painful sensitivity of the teeth to cold, heat, acids, sweets or contact | • aids in the prevention of cavities<br>• helps prevent gingivitis<br>• helps interfere with the harmful effects of plaque associated with gingivitis<br>• builds increasing protection against painful sensitivity of the teeth to cold, heat, acids, sweets or contact |
| **Warnings** | When using this product do not use for Sensitivity longer than four weeks unless recommended by a dentist.<br><br>Stop use and ask a dentist if the sensitivity problem persists or worsens. Sensitive teeth may indicate a serious problem that may need prompt care.<br><br>Keep out of reach of children. If more than use for brushing is accidentally swallowed, get medical help or contact a Poison Control Center right away. | When using this product do not use for Sensitivity longer than four weeks unless recommended by a dentist.<br><br>Stop use and ask a dentist if the sensitivity problem persists or worsens. Sensitive teeth may indicate a serious problem that may need prompt care.<br><br>Keep out of reach of children. If more than use for brushing is accidentally swallowed, get medical help or contact a Poison Control Center right away. |

| Directions | • adults and children 12 yrs. & older; apply at least a 1-inch strip of the product onto a soft bristled toothbrush. Brush teeth thoroughly for at least 1 minute twice a day (morning and evening) or as recommended by a dentist.<br><br>• do not swallow<br><br>• children under 12 yrs.: ask a dentist | • adults and children 12 yrs. & older; apply at least a 1-inch strip of the product onto a soft bristled toothbrush. Brush teeth thoroughly for at least 1 minute twice a day (morning and evening) or as recommended by a dentist.<br><br>• do not swallow<br><br>• children under 12 yrs.: ask a dentist |
|---|---|---|
| Other Information | • products containing stannous fluoride may produce surface staining of the teeth<br><br>• adequate toothbrushing may prevent these stains which are not harmful and may be removed by your dentist<br><br>• this Crest is specially formulated to help prevent staining<br><br>• see your dentist regularly | • products containing stannous fluoride may produce surface staining of the teeth<br><br>• adequate toothbrushing may prevent these stains which are not harmful and may be removed by your dentist<br><br>• this Crest is specially formulated to help prevent staining<br><br>• see your dentist regularly |
| Inactive Ingredients | • glycerin, hydrated silica, sodium hexametaphosphate, propylene glycol, PEG-6, water, zinc lactate, flavor, trisodiuym phosphate, sodium lauryl sulfate, sodium gluconate, carrageenan, sodium saccharin, xanthan gum polyethylene, <u>titanium dioxide, blue 1</u> (underlining added) | • glycerin, hydrated silica, sodium hexametaphosphate, propylene glycol, PEG-6, water, zinc lactate, flavor, trisodiuym phosphate, sodium lauryl sulfate, sodium gluconate, carrageenan, sodium saccharin, xanthan gum polyethylene, <u>blue lake 1</u> (underlining added) |
| Patents | US Patent 6,696,045; 6,740,311 | US Patent 6,696,045; 6,740,311 |
| Price | $6.99 for 4.2 ounces | $3.99 for 4.2 ounces |

7.	It appears that P&G made no change to its Crest Pro-Health toothpaste except to add titanium dioxide, an inactive food coloring sometimes referred to as "pigment white." This produced a slightly different color paste, making it appear light green instead of light blue.  This change has no medicinal significance. Nevertheless, P&G added the work "New!" and the rapid-relief claims (e.g., "Relief Within Minutes") to the label, added three dollars to the price, and called the resulting product Crest Sensitivity.

8.      Plaintiff purchased Crest Sensitivity at a Walgreens store near his home in Shaker Heights, Ohio. Having been presented with P&G's multi-labeled Crest Sensitivity and Crest Pro-Health, which products were all-but identical except for their price, Plaintiff—like all reasonable consumers—purchased and paid more for Crest Sensitivity solely based on its rapid-relief claims, since if given the choice to pay more for one of two identical products, neither Plaintiff nor any reasonable consumer would choose to do so.

9.      Plaintiff seeks relief in this action individually and as a class action on behalf of similarly situated purchasers of Crest Sensitivity for violation of the Magnuson-Moss Warranty Act, Ohio common-law fraud, violation of the Ohio Consumer Sales Practices Act, violation of the Ohio Deceptive Trade Practices Act, unjust enrichment under Ohio law, injunctive relief under Ohio law, and declaratory relief under federal law.


## PARTIES

10.      Plaintiff, Richard Immerman, resides in Shaker Heights, Ohio.

11.      Defendant, Procter & Gamble Company, is a corporation organized under Ohio law with its principal place of business at One Procter & Gamble Plaza, Cincinnati, Ohio 45202. P&G is engaged in the business of manufacturing, marketing, and distributing health-care and branded consumer products under various brand names including Vicks®, Pampers®, Tide®, Ariel®, Always®, Whisper®, Pantene®, Mach3®, Bounty®, Dawn®, Gain®, Pringles®, Charmin®, Downy®, Lenor®, Iams®, Crest®, Oral-B®, Actonel®, Duracell®, Olay®, Head & Shoulders®, Wella®, Gillette®, and Braun®. P&G manufactures, markets, and distributes Crest Sensitivity, Crest Pro-Health, and other Crest toothpastes.

## JURISDICTION AND VENUE

12.    This Court has subject-matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331 and has supplemental jurisdiction over his state-law claims under 28 U.S.C. § 1367.

13.    This Court also has subject-matter jurisdiction over this action under 28 U.S.C. § 1332(d) because it involves more than 100 class members; the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs; and at least one class member is a citizen of a different state than P&G.

14.    Venue is proper in this District under 28 U.S.C. § 1391 because P&G does business throughout this District, and a substantial part of the events giving rise to Plaintiff's claims took place within it.

## FACTS

**A.    Crest Sensitivity's labeling contains lies about its tooth-pain-reducing attributes.**

15.    Tooth sensitivity (or dentin hypersensitivity) afflicts nearly 40 million people in the U.S. It occurs when gums recede or enamel is eroded, and the underlying layer of the tooth (the dentin) becomes exposed and starts to erode. The dentin contains microscopic tubules (small hollow tubes or canals) that lead to nerves in a tooth. When the tubules are exposed, stimuli, like heat or cold, will cause sharp sensations of pain.

16.    Stannous fluoride can be effective against sensitivity after several weeks of brushing by occluding open tubules on the surface of the tooth, thereby preventing stimuli from reaching the nerves. But no competent or reliable scientific evidence exists demonstrating that stannous fluoride provides rapid relief as Crest Sensitivity's label proclaims.

17.     Claims promising relief from sensitive tooth pain within minutes instead of weeks (the expected time frame with most sensitivity toothpastes on the market) are particularly attractive to P&G's target market. Crest Sensitivity's label promises relief from sensitive-tooth pain "within minutes," and repeats that promise four times. The claim, "Relief Within Minutes*," appears in large bold print on the front center of Crest Sensitivity's packaging. The asterisk references a statement on the back panel that reinforces Crest's rapid-relief claim, stating, "*For sensitivity relief within minutes, first brush sensitive teeth for 30 seconds each." The back panel also includes an illustration that repeats the "relief within minutes" claim twice more:

> Crest Stannous Fluoride provides sensitivity relief within minutes by starting to block micro-channels with the first brushing.
>
> When used as directed, Crest Sensitivity Treatment and Protection provides relief from sensitivity pain within minutes* and builds increasing protection against tooth sensitivity.

18.     NAD, which has expertise in determining the express and implied messages reasonably conveyed by an advertisement, particularly in multi-labeling situations, determined that Crest Sensitivity's label conveys the message that sensitive teeth sufferers who use Crest Sensitivity will experience a significant and immediate reduction in, if not complete elimination of, tooth sensitivity, despite the fact that Crest Sensitivity is no different formulaically than Crest Pro-Health.[3]

19.     NAD also determined that no competent and reliable scientific evidence exists to support P&G's claims that Crest Sensitivity provides relief within minutes and recommended that P&G discontinue these claims.[4] NAD decided this because, in fact, no competent and

---

[3] *Id.* at 10.
[4] *Id.* at 13-14

reliable scientific evidence exists to support P&G's claims that Crest Sensitivity provides relief within minutes.

**B.     P&G multi-labels Crest Sensitivity and Crest Pro-Health in such a manner as to encourage customers to believe that when they purchase Crest Sensitivity, they are purchasing a product with the ability to reduce tooth pain when Crest Sensitivity actually can't and doesn't.**

20.     P&G intentionally advertises, markets, and sells identical toothpastes—Crest Sensitivity and Crest Pro-Health—with different labels touting Crest Sensitivity's fabricated, enhanced attributes.

21.     P&G sells these identical but differently labeled products at different prices with Crest Sensitivity costing consumers significantly more per tube for no greater benefit than had these consumers purchased Crest-Pro Health. In so doing, P&G represents that the Crest Sensitivity and Crest Pro-Health are different when they are actually the same.

22.     In advertising, marketing, and selling Crest Sensitivity and Crest Pro-Health, P&G charges or causes retailers to charge a higher price for Crest Sensitivity when it involves the essentially identical formulation to Crest Pro-Health.

23.     In advertising, marketing, and selling Crest Sensitivity and Crest Pro-Health, P&G suppresses and fails to disclose the material fact that these toothpastes are identical but for their color.

24.     In advertising, marketing, and selling these essentially identical toothpastes— charging $3 more per tube for Crest Sensitivity—P&G repeatedly lies about Crest Sensitivity's tooth-pain-reducing attributes when these attributes don't really exist and conceals, suppresses, and fails to disclose the material fact that Crest Sensitivity does no more than Crest Pro-Health, albeit at $3 more per tube.

**C.**     **P&G's factual connection to Ohio encourages Ohio law's nationwide application.**

25.     P&G maintains its world headquarters in Cincinnati, Ohio where it houses and maintains sales, marketing, research-and-development, and administrative functions.

26.     Upon information and belief, P&G employs thousands of people at this location and elsewhere in and around Cincinnati.

27.     Upon information and belief, Crest Sensitivity and Crest Pro-Health research and development occurs at or in the vicinity of P&G's Ohio world headquarters, and P&G manufactures all or some of its Crest Sensitivity and Crest Pro-Health at or in the vicinity of its Ohio world headquarters.

28.     Upon information and belief, P&G devised, negotiated, implemented, concealed, advertised, and profited from its illegal multi-labeling scheme from its Ohio world headquarters. In like manner, P&G conceived, drafted, and executed its illegal multi-labeling scheme from its Ohio world headquarters.

29.     Upon information and belief, employees working at its Ohio world headquarters carried out, concealed, and profited from P&G's multi-labeling scheme.

30.     Upon information and belief, P&G entered into contracts for the sale of its multi-labeled toothpastes from its Ohio world headquarters. P&G likewise formulated and promulgated marketing strategies to retailers for ultimate sale to consumers from its Ohio world headquarters.

31.     Upon information and belief, P&G maintains at or in the vicinity of his Ohio world headquarters a customer-relations office that handles customer inquiries relating to Crest Sensitivity and Crest Pro-Health, among other products.

## CLASS-ACTION ALLEGATIONS

32.     Plaintiff brings this action on behalf of himself and as a class action under Federal

Rule 23(a) and (b)(2) and (b)(3) on behalf of the following alternative classes:

> **Nationwide class for money damages and injunctive relief:** All people residing in the U.S. who purchased Crest Sensitivity toothpaste for personal, end use.

> **Ohio-only class for money damages and injunctive relief:** All people residing in Ohio who purchased Crest Sensitivity toothpaste for personal, end use.

> Plaintiff excludes from both classes P&G's officers, directors, and employees as well as employees of all entities in which any P&G has a controlling interest.

33.     Plaintiff purchased Crest Sensitivity and is therefore a member of both classes.

34.     Plaintiff believes that the number of people in the classes is in the thousands, so

individual joinder of all members is impracticable.

35.     Plaintiff's claims are typical of the class members' claims since Plaintiff and class

members purchased Crest Sensitivity, their claims arise from P&G's multi-labeling, and they all

seek the same relief.

36.     Plaintiff will fairly and adequately represent and protect the interests of the class

members as Plaintiff's interests are typical of the class members' interests, and Plaintiff has no

conflict with other class members. Also, Plaintiff has retained experienced and competent

counsel.

37.     Common legal or factual questions exist as to all class members, which questions

predominate over any questions affecting solely individual class members. Among the common

legal and factual questions are:

> a.     whether P&G multi-labeled its Crest Sensitivity and Crest Pro-Health with Crest Sensitivity bearing false labels misrepresenting that it was "New!" and would provide "Relief Within Minutes";

b.      whether P&G simply changed the food coloring and packaging of CrestPro-Health and sold it at a 75% premium, lying that it was "New!" and would provide "Relief Within Minutes";

c.      whether class members suffered an ascertainable losses as a result of the P&G's multi-labeling and mislabeling of Crest Sensitivity;

d.      whether P&G violated the Magnuson-Moss Warranty Act by falsely labeling "Relief Within Minutes";

e.      whether P&G committed common-law fraud by claiming that Crest Sensitivity was "New!" and would provide "Relief Within Minutes";

f.      whether P&G violated the Ohio Consumer Sales Practices Act by claiming that Crest Sensitivity was "New!" and would provide "Relief Within Minutes";

g.      whether P&G violated the Ohio Deceptive Trade Practices Act by claiming that Crest Sensitivity was "New!" and would provide "Relief Within Minutes";

h.      whether Plaintiff and class members unjustly enriched P&G  by paying more for Crest Sensitivity when it didn't contain the attributes P&G advertised;

i.      whether class members are entitled to injunctive relief on account of P&G having falsely claimed that Crest Sensitivity was "New!" and would provide "Relief Within Minutes";

j.      whether class members are entitled to declaratory relief on account of P&G having falsely claimed that Crest Sensitivity was "New!" and would provide "Relief Within Minutes";

k.      whether P&G's lies that Crest Sensitivity was "New!" and would provide "Relief Within Minutes" proximately caused Plaintiff's and class members' money damages;

l.      whether P&G's lies that Crest Sensitivity was "New!" and would "Relief Within Minutes" proximately caused Plaintiff's and class members' entitlement to injunctive and declaratory relief;

m.      the amount of Plaintiff's and class members' monetary relief; and

n.      the amount and manner of injunctive and declaratory relief that P&G owes Plaintiff and class members.

38.     Class certification of the respective, alternative classes is appropriate under

Federal Rule 23(b)(3) because a class action is the superior procedural vehicle for fairly and

efficiently adjudicating Plaintiff's and class members' claims given that:

    a.     Common questions of law and fact overwhelmingly predominate over any individual questions that may arise among or within the respective, alternative classes and, consequently, enormous economies to the court and parties exist in litigating the common issues on a classwide basis or, alternatively, bases, instead of on a repetitive individual basis or, alternatively, bases;

    b.     Each individual class member's damage claim is too small to make individual litigation an economically viable alternative, and few class members have any interest in individually controlling the prosecution of separate actions;

    c.     Class treatment is required for optimal deterrence and compensation and for limiting the court-awarded reasonable legal expenses incurred by class members; and

    d.     Despite the relatively small size of each individual class member's claim, the aggregate volume of their claims, whether considered in a national class or, alternatively, an Ohio-only class, coupled with the economies of scale inherent in litigating similar claims on a common basis, will enable this case to be litigated as a class action on a cost effective basis, especially when compared with repetitive individual litigation, and no unusual difficulties are likely to be encountered in this class action's management in that all legal and factual questions are common to the class or, alternatively, classes.

39.     Class certification is appropriate under Federal Rule 23(b)(2) because P&G has

acted on grounds generally applicable to Plaintiff and class members, all of whom are at

imminent risk of irreparable harm by continuing to pay an illegally high price for Crest

Sensitivity.

## COUNT I
### Violation of Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*
### (Applicable to the Nationwide Class under Federal Rule 23(b)(3))

40.     Crest Sensitivity is a consumer product as defined in 15 U.S.C. § 2301(1).

41.     Plaintiff and class members are consumers as defined in 15 U.S.C. § 2301(3).

42.     P&G is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) and (5).

43.     In connection with the sale of the Crest Sensitivity, P&G issued written warranties as defined in 15 U.S.C. § 2301(6), warranting that Crest Sensitivity was "New!" and would provide "Relief Within Minutes."

44.     But Crest Sensitivity is not "New!" Instead, it is the same formulation that P&G previously sold as Crest Pro-Health disguised with different packaging and a different coloring additive.

45.     Neither does Crest Sensitivity offer "Relief Within Minutes," as P&G's written warranty promised.

46.     Within a reasonable time of discovering the breach of warranty by P&G, Plaintiff through counsel notified P&G of the breach of warranty.

47.     P&G has been afforded a reasonable opportunity to perform under its warranties and has failed to perform.

48.     P&G injured Plaintiff and class members as a direct and proximate result of its Magnuson-Moss violation, thus entitling them to damages, equitable relief, costs, expenses, and attorneys' fees.

### COUNT II
### Common-Law Fraud Under Ohio Law
### (Applicable to the Nationwide Class or alternatively to the Ohio-Only Class under Federal Rule 23(b)(3))

49.     P&G had knowledge of the material facts that Crest Sensitivity was neither new nor provided relief within minutes.

50.     P&G concealed the fact that Crest Sensitivity was neither new nor provided relief within minutes.

51.     P&G intended to induce Plaintiff and class members to rely on its false representation that Crest Sensitivity was new and relief within minutes.

52.     Plaintiff and class members actually relied on P&G's false representation that Crest Sensitivity was new and relief within minutes.

53.     Plaintiff and class members were directly and proximately injured by their reliance on Crest's false representation that Crest Sensitivity was new and relief within minutes and are thus entitled to damages.

**COUNT III**
**Violation of the Ohio Consumer Sales Practices Act, O.R.C. §1345, *et seq.***
**(Applicable to the Nationwide Class or alternatively to the Ohio-Only Class under**
**Federal Rule 23(b)(3))**

54.     P&G's conduct involves consumer transactions as defined in O.R.C. § 1345.01(A).

55.     P&G is a supplier as defined by O.R.C. § 1345.01(C).

56.     Plaintiff is a consumer as defined by O.R.C. § 1345.01(D).

57.     P&G violated and continues to violate the CSPA by engaging in the following practices proscribed by O.R.C. § 1345.02:

> (A) "commit[ting] an unfair or deceptive act or practice in connection with a consumer transaction";
>
> (B)(1) representing that Crest Sensitivity has "performance characteristics . . .  uses, or benefits that it do[es] not] have";
>
> (B)(2) representing that Crest Sensitivity is "of a particular standard, quality, grade, style [or] prescription" when it is not;
>
> (B)(4) representing that Crest Sensitivity's advertised attributes are "available to the consumer for a  reason that does not exist";
>
> (B)(5) representing that it is "suppl[ying Crest Sensitivity] in accordance with a previous representation, when it isn't; and

(B)(8) representing "[t]hat [Crest Sensitivity has] a specific price advantage [when] it does not."

58.    According to Ohio Admin. Code § 109:4-3-10(A) (Substantiations of Claims In Advertising), it shall be a deceptive act or practice in connection with a consumer transaction for a supplier to:

> Make any representations, claims or assertions of fact, whether orally or in writing, which would cause a reasonable consumer to believe such statements are true, unless, at the time such representations, claims or assertions are made, the supplier possesses or relies upon a reasonable basis in fact such as factual, objective, quantifiable, clinical or scientific data or other competent and reliable evidence which substantiates such representations, claims or assertions of fact.

59.    P&G further violated and continues to violate the CSPA by engaging in the following practices proscribed by O.R.C. § 1345.03:

> (A) "an unconscionable act or practice in connection with a consumer transaction";
>
> (B)(2) "kn[owledge] at the time the consumer transaction was entered into that [Crest Sensitivity's] price was substantially in excess of the price at which similar property or services were readily obtainable in similar consumer transactions by like consumers";
>
> (B)(3) "kn[owledge] at the time the consumer transaction was entered into of the inability of the consumer to receive a substantial benefit from the subject of the consumer transaction"; and
>
> (B)(6) "knowingly ma[king] a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment."

60.    P&G's false, unfair, deceptive, and unconscionable acts have previously been declared to be false, unfair, deceptive, or unconscionable. The Ohio Attorney General has made

the following materials, among others, publicly available for inspection, which materials declare

similar actions unfair, deceptive, and unconscionable:

- Judgment Entry in *State ex rel. Rogers v. Airborne Health, Inc.*, No. 08 CVH 12 17848, Court of Common Pleas, Franklin County, Public Inspection File No. 10002744;

- Judgment Entry in *State ex rel. Cordray v. The Dannon Company, Inc.*, No. 10 CVH-12-18225, Court of Common Pleas, Franklin County, Public Inspection File No. 10002917;

- Complaint and Judgment Entry in *State ex rel. Dann v. Purdue Pharma, Inc.*, No. 07 CVH 05 6195, Court of Common Pleas, Franklin County, Public Inspection File No. 10002558;

- Complaint and Judgment Entry in *William J. Brown v. Town & Country Food Distributors, Inc.*, Case No. 73-840, Court of Common Pleas, Montgomery County, Public Inspection File No. 10000432;

- Assurance of Voluntary Compliance in *In re Murdock*, Case No. C1-90-0098, Consumer Protection Section, Franklin County, Public Inspection File No. 10001286; and

- Complaint and Judgment Entry in *State ex rel. Brown v. Richard M. Hartman*, Case No. 81-CV-1587, Court of Common Pleas, Mahoning County, Public Inspection File No. 10000070.

61.    P&G had ample prior notice that when selling food or drug products, it is a false,

unfair, deceptive, and unconscionable act or practice to misrepresent their quality, make

misleading statements of opinions concerning them, misrepresent their uses, and place inaccurate

advertisements regarding their descriptions for sale.

62.    As such, P&G also prior notice that if it engaged in the foregoing false, unfair,

deceptive, and unconscionable multi-labeling and other related acts, the CSPA would require it

to make full restitution and reimbursement to its victimized purchasers.

63.    In conjunction with P&G's CSPA violations, P&G is also violated Ohio Admin.

Code §109:4-3-10 because, in connection with a consumer transaction, P&G made written

representations, claims, or assertions of fact that caused reasonable consumers to believe its statements were true when at the time P&G made these representations, claims, or assertions it neither possessed nor relied upon reasonable bases in fact, such as factual, objective, quantifiable, clinical or scientific data, or other competent and reliable evidence, to substantiate its representations, claims, or assertions of fact.

64.     The foregoing OAC provision provided P&G additional notice that its multi-labeling and other related acts were false, unfair, deceptive, and unconscionable in violation of the CSPA.

65.     O.R.C. § 3715.01(3)(a) defines food as articles used for food or drink for humans or animals, § 3715.52 prohibits the misbranding and sale of any food and the dissemination of any false advertisement, § 3715.60 states that a food is misbranded if its label is false and misleading in any manner, and O.R.C § 3715.68 explains that an advertisement of food is false if it is false or misleading in any particular.

66.     O.R.C. §§ 3715.01, 52, 60, and 68 all provided P&G further notice its multi-labeling and other related acts were false, unfair, deceptive, and unconscionable in violation of the CSPA.

67.     P&G's CSPA violations directly and proximately caused damage to Plaintiff and class members.

68.     Pursuant to O.R.C. § 1345.09(A), Plaintiff and class members are entitled to rescind their consumer transactions or to recover their actual damages.

69.     Pursuant to O.R.C. § 1345.09(D), Plaintiff and class members are entitled to injunctive and declaratory relief.

70.     Pursuant to O.R.C. § 1345.09(F)(2), Plaintiff and class members are entitled to their attorneys' fees since P&G knowingly committed an act or practice that violates the CSPA.

71.     Pursuant to O.R.C. § 1345.09(E), Plaintiff will serve this Complaint on the Ohio Attorney General.

## COUNT IV
### Violation of the Ohio Deceptive Trade Practices Act, O.R.C. § 4165.01, *et seq.* (Applicable to the Nationwide Class or alternatively to the Ohio-Only Class under Federal Rule 23(b)(3))

72.     P&G is a person as defined in O.R.C. § 4165.01(D).

73.     P&G has engaged in false, unfair, deceptive, untrue, and misleading advertising in violation of O.R.C. § 4165.02:

> (A)(7) Represent[ing] that goods . . . have sponsorship, approval, characteristics, ingredients, uses [or] benefits . . . that they do not have;

> (A)(9) Represent[ing] that goods . . . are of a particular standard, quality or grade [when] they are of another; and

> (A)(11) Advertis[ing] goods  . . . with intent not to sell them as advertised.

74.     P&G's DTPA violations directly and proximately caused damage to Plaintiff and class members.

75.     Pursuant to O.R.C. § 4165.03(A)(1), Plaintiff and class members are entitled to injunctive relief.

76.     Pursuant to O.R.C. § 4165.03(A)(2), Plaintiff and class members are entitled to recover their actual damages.

77.     Pursuant to O.R.C. § 4165.03(B), Plaintiff and class members are entitled to their attorneys' fees since P&G willfully engaged in the foregoing deceptive trade practices knowing them to be deceptive.

**COUNT V**
**Unjust Enrichment Under Ohio Law**
**(Applicable to the Nationwide Class or alternatively to the Ohio-Only Class under Federal Rule 23(b)(3))**

78.     As the result Plaintiff and class members paying for Crest Sensitivity when it didn't perform as P&G advertised, Plaintiff ultimately conferred a benefit upon P&G, and P&G received and retained this benefit under such circumstances that it would be inequitable and unconscionable to permit P&G to retain this benefit without paying its reasonable value to Plaintiff and class members.

79.     As a direct and proximate result of P&G's unjust enrichment, Plaintiff and class members suffered injury and seek an order directing P&G to return to them the amount each of them improperly paid to P&G, plus interest.

**COUNT VI**
**Request for Injunctive Relief Under Ohio Law**
**(Applicable to the Nationwide Class or alternatively to the Ohio-Only Class under Federal Rule 23(b)(2))**

80.     Injunctive relief is appropriate when it appears with reasonable certainty that a party to an action will continue or will repeat its wrongful acts.

81.     Enjoining P&G from continuing to sell multi-labeled and ineffective Crest Sensitivity and from charging consumers for its multi-labeled and ineffective product is appropriate because Plaintiff has established a reasonable likelihood of success on the merits; Plaintiff and class members will suffer irreparable harm without such an order; the balance of the equities, including the public interest, weigh in favor of granting Plaintiff's request for injunctive relief; and alternate remedies are inadequate to assist Plaintiff.

**COUNT VII**
**Request for Declaratory Relief Pursuant to the**
**Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.***
**(Applicable to the Nationwide Class under Federal Rule 23(b)(2))**

82.     Plaintiff and class members contend that P&G is engaging illegal multi-labeling;

P&G believes that its illegal multi-labeling practice is proper.

83.     As such, an actual controversy exists between Plaintiff and class members and

P&G concerning the parties' rights and duties with respect to P&G's multi-labeling practices.

84.     The parties require this Court's declaration as to their respective rights; duties;

and any other relevant legal relations, regardless of whether the parties could seek or are

otherwise entitled to further relief.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the following relief:

A.      An order finding this action may be maintained as a class action under
        Federal Rules 23(b)(2) and (3), certifying Plaintiff's Nationwide Class (on
        his Nationwide legal claims) and/or his Ohio-Only Class (on his Ohio-
        Only legal claims), and appointing Plaintiff's counsel as counsel for the
        class or classes;

B.      With respect to Count I, an order finding that P&G violated the
        Magnuson-Moss Warranty Act and awarding damages, equitable relief,
        costs, expenses, and attorneys' fees;

C.      With respect to Count II, an order finding that P&G committed common-
        law fraud against Plaintiff and class members and awarding damages;

D.      With respect to Count III, an order finding that P&G violated the CSPA
        and awarding damages, injunctive, and declaratory relief;

E.      With respect to Count IV, an order finding that P&G violated the DTPA
        and awarding damages and attorneys' fees;

F.      With respect to Count V, an order in favor of Plaintiff and class members
        declaring that they unjustly enriched P&G and ordering disgorgement of
        P&G's ill-gotten gains or that P&G make restitution to Plaintiff and class
        members;

G.  With respect to Count VI, an order enjoining P&G from continuing to advertise that Crest Sensitivity is "New!" and provides "Relief Within Minutes";

H.  With respect to Count VII, an order declaring that P&G must discontinue advertising that Crest Sensitivity is New!" and provides "Relief Within Minutes";

I.  An order awarding pre-judgment and post-judgment interest as applicable; and

J.  An order awarding all other relief as may be just and appropriate.


## JURY DEMAND

Plaintiff demands trial by jury on all triable issues.


Dated: January 11, 2012                  Respectfully submitted,

                                         *s/ Daniel R. Karon*
                                         Daniel R. Karon (#0069304)
                                         Laura Killian Mummert
                                         **GOLDMAN SCARLATO KARON & PENNY, P.C.**
                                         700 W. St. Clair Ave., Suite 204
                                         Cleveland, OH 44113
                                         Telephone:(216) 622-1851
                                         E-mail:    karon@gskplaw.com
                                                    mummert@gskplaw.com

                                         Paul M. Weiss
                                         Jeffrey A. Leon
                                         **COMPLEX LITIGATION GROUP, LLC**
                                         111 West Washington Street, Suite 1331
                                         Chicago, IL 60602
                                         Telephone:(866) 779-9610
                                         E-mail:    paul@freedweiss.com
                                                    jeff@freedweiss.com

                                         Jonathan Shub
                                         **SEEGER WEISS LLP**
                                         77 Water Street
                                         New York, NY 10005
                                         Telephone:(215) 564-2300

E-mail:     jshub@seegerweiss.com

Vincent J. Esades
**HEINS MILLS & OLSON, P.L.C.**
310 Clifton Avenue
Minneapolis, MN 55403
Telephone:(612) 338-4605
Facsimile: (612) 338-4692
Email:      vesades@heinsmills.com

Jack Landskroner (#0059227)
Drew Legando (#0084209)
**LANDSKRONER GRIECO MERRIMAN, LLC**
1360 West 9th Street, Suite 200
Cleveland, OH 44113
Telephone: (216) 522-9000
E-mail:      jack@lgmlegal.com
             Drew@lgmlegal.com

Derek G. Howard
**MINAMI TAMAKI, LLP**
360 Post St., 8th Floor
San Francisco, CA 94108
Telephone:(415) 788-9000
E-mail:      dhoward@minamitamaki.com

John S. Chapman
Alin L. Rosca
**JOHN S. CHAPMAN & ASSOCIATES**
700 West St. Clair Avenue
Cleveland, OH 44113
Telephone:(216) 241-8172
Email:      jchapmsn@jscltd.com
             arosca@jscltd.com

*Attorneys for Plaintiff*